NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                                                                          :     Chapter 13

In re:                                                              :
                                                                             :     Case No. 20-11252 (CGM)

     Ben Zion Kozuch,

                                    Debtor.

------------------------------------------------------------X

Eitan Liel,
                Plaintiff,                          :     Adv. No. 20-01206 (CGM)
     v.

Ben Zion Kozuch,
                Defendant.
------------------------------------------------------------X

**MEMORANDUM DECISION GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT**

**A P P E A R A N C E S :**

Martin E. Karlinsky
Karlinsky LLC
103 Mountain Road
Cornwall-on-Hudson, NY 12520
Attorney for Plaintiff via Zoom

Cooper Macco
2950 Express Drive South
Suite 109
Islandia, NY 11749
Attorney for Defendant via Zoom

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

**Jurisdiction**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012.  This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(I) ("determinations as to the dischargeability of particular debts").

**Background**

The parties are acquaintances[1] who met in the 1980s and went into business together.  P. Stmt. ¶ 5, ECF No. 23.  Defendant-Debtor, accepted diamonds on consignment from Plaintiff and sold them in the United States.  *Id.*  A dispute arose between them over remittance of the proceeds from the sale of diamonds and Plaintiff commenced an action against the Defendant in Tel Aviv, Israel.  *Id.* ¶ 5-6.  On July 6, 1993, Plaintiff and his co-plaintiff in the Israeli action obtained a judgment against Defendant in the amount of New Israeli Shekels ("NIS") 256,906 plus attorney's fees and costs of 23,000 (totaling 279,906 NIS) as well as value added tax ("VAT").  *Id.* ¶ 14.

On September 6, 1991, prior to the judgment being entered in Israel, the Defendant filed bankruptcy in the District of New Jersey ("N.J. Bankruptcy Case") and received a discharge of his debts on January 6, 1992.  *In re Kozuch*, 91-26045-RG (Bankr. D. N.J. 1991); P. Stmt. ¶ 16.

As Plaintiff tried to enforce his judgment against Defendant, Defendant raised the issue of his 1992 discharge.  In 1997, Defendant attempted to have the enforcement proceedings halted on account of his bankruptcy discharge, but the Israeli district court rejected his arguments and permitted enforcement of the judgment.

---

[1] "Although they had not served together, Liel and Kozuch knew of each other's service in the 1980s in the Israel Defense Forces."

Defendant filed a chapter 13 case in the Southern District of New York on May 22, 2020. Plaintiffs filed a claim in this chapter 13 case in the amount of $2,573,367.23. This adversary proceeding was filed on August 12, 2020 objecting to the discharge of the debt on the basis of false pretenses, false representation, actual fraud, pursuant to § 523(a)(2) (hereinafter "fraudulently incurred debts"). Plaintiff asks this Court to recognize the foreign judgment, apply comity and res judicata, and enter summary judgment in his favor.

Defendant raised his prior chapter 7 discharge as a defense to this debt. Defendant also argues that the Court should not recognize the Israeli judgment under comity and because the judgment is over twenty years old.

## Discussion

*Whether the debt has been discharged?*

The N.J. Bankruptcy Case discharge order states: "Any judgment heretofore or hereafter obtained in any court other than this court is null and void as a determination of the personally liability of the debtor with respect to any of the following . . . debts dischargeable under 11 U.S.C. sec. 523 . . . ." Disch. Or., PX-3, ECF No. 35-4. If the Court determines that the debt at issue here was discharged in 1992, the judgment obtained by Plaintiff is "null and void" by virtue of this discharge order. *Id.*

"A discharge under 11 U.S.C. § 727 discharges every prepetition debt, without regard to whether a proof of claim has been filed, unless that debt is specifically excepted from discharge under 11 U.S.C. § 523." *Madaj v. Madaj (In re Madaj)*, 149 F.3d 467, 469 (6th Cir. 1998). For a fraudulently incurred debt to be excepted from discharge, a creditor must specifically ask the bankruptcy court to declare the debt nondischargeable. 11 U.S.C. § 523(c)(1) ("[T]he debtor shall be discharged from a debt of a kind specified in paragraph (2) . . . of subsection (a) of this

section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2) . . . of subsection (a) . . . ."). Federal Rule of Bankruptcy Procedure 4007 requires that such a request be made while the case is still pending. Fed. R. Bankr. P. 4007(c) (requiring creditor to bring a complaint seeking to determine the dischargeability of a fraudulently incurred debt within sixty days of the first meeting of creditors); *see also Judd v. Wolfe*, 78 F.3d 110, 114 (3d Cir. 1996) ("Bankruptcy Rule 4007(c) requires a complaint to be filed before the discharge is entered"). The only exception to the discharge of a fraudulently incurred debt is set forth in § 523(a)(3).

Section 523(a)(3)(B) excepts from discharge fraudulently incurred debts[2] that are "neither listed nor scheduled under section 521(a)[[3]](1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request." [4]

There is no dispute that Plaintiff did not move to have his debt declared nondischargeable in the Defendant's N.J. Bankruptcy Case. Instead, Plaintiff argues that he did not receive notice of the N.J. Bankruptcy Case in time to bring such an action and, therefore, his debt was not discharged, pursuant to § 523(a)(3). Defendant argues that the Plaintiff was listed and scheduled and, as such, the debt was discharged as a matter of law.

---

[2] The Court assumes, without deciding, that the debt at issue here meets the definition of "fraudulently incurred debt" under § 523(a)(2).

[3] The "(a)" was inserted into § 521 by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Prior to 2005, § 521(1) stated: "The debtor shall—(1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities . . . ." *D'Agostino v. Walker (In re Walker)*, 125 B.R. 177, 180 (E.D. Mich. 1990); *see also* 11 U.S.C. § 521(1) (1992).

[4] Section 523 has not meaningfully changed since the Bankruptcy Code's enactment in 1978. *Compare* 11 U.S.C § 523(a)(3) (1978) *with* 11 U.S.C § 523(a)(3) (2021).

The parties have submitted evidence that the creditor was listed and the debt was scheduled in Defendant's N.J. Bankruptcy Case. PX-3, ECF No. 35-4. Attached as an exhibit to Plaintiff's declaration is a copy of the Defendants discharge order dated January 6, 1992 and a copy of Defendant's schedule A-3, which lists "Creditors Having Unsecured Claims Without Priority." The schedule A-3 lists the debt at issue here as a disputed debt in the amount of approximately $120,000[5] as follows:

> East Diamonds and Eitan Liel
>
> 52 Bezalel Street
>
> Ramat-Gan Israel 52521.

Plaintiff testified under oath at his deposition that the address of his business, East Diamonds,[6] was Bezalel 52, Ramat Gan. P. Depo. at 24:11-12, ECF No. 28-5 (D. Ex E). Defendant also testified that he continued to do business as East Diamonds until December of 1992. *Id.* at 23-24.

This evidence is sufficient to demonstrate that the debt was discharged in the N.J. Bankruptcy Case. Section 523(a)(3) requires only that a debt be "listed" *or* "scheduled" under § 521(a)(1) (emphasis added). 11 U.S.C § 523(a)(3); *Massa v. Addona (In re Massa)*, 187 F.3d 292, 297, 298 (2d Cir. 1999) ("[S]cheduling is critical."). "Because a schedule of assets and liabilities necessarily includes a listing of creditors, their addresses and the amount of the debt, it is obvious that section 521 does not require the filing of a separate list of creditors if a schedule of assets and liabilities is filed." 4 Collier of Bankr. ¶ 521.03. A creditor is considered "duly scheduled and listed if the address provided by the debtor is sufficiently accurate to permit delivery by the United States Postal Service to the appropriate party." *D'Agostino v. Walker (In re Walker)*, 125 B.R. 177. 180 (Bank. E.D. Mich. 1990).

---

[5] The document is difficult to read.
[6] Plaintiff testified that he owned 99% of East Diamonds and his wife owned the remaining 1%.

Actual knowledge of the bankruptcy filing must only be shown where a debt is not listed or scheduled. *Id.*; *In re Heyward*, 15 B.R. 629 (Bankr. E.D.N.Y. 1981) ("[T]he timely listing of creditors and their claims is all that is required of the debtor."). A creditor challenging the scheduling of a debt must establish that the address provided was so incorrect that the United States Postal Service would not have been able to deliver the mail. *Walker*, 125 B.R. at 180.

The reason the Bankruptcy Code requires that a debtor list all his creditors is because it is the bankruptcy court, and not the debtor, that is responsible for noticing a debtor's creditors of the bankruptcy case and important deadlines. *Id.* at 632 ("The reason for allocating this responsibility and its attendant penalties to the debtor is that it works to assure that the court will identify all creditors and thereby convey to them proper notice of the matter."); *see also* Fed. R. Bankr. P. 2002(a, f) (requiring "the clerk" to provide notice of the deadline to file a proof of claim and the deadline to file a complaint objecting to the discharge of a debt to "all creditors"). Furthermore, "the timely listing or scheduling of the debt is all that is required of the debtor. If the court fails to send notice to the creditor or if, for some reason, the creditor is not actually informed of the bankruptcy, the debt will be discharged nonetheless." *Heyward*, 15 B.R. at 632 (internal quotation and citation omitted); *see also Massa v. Addona (In re Massa)*, 187 F.3d 292, 297 (2d Cir. 1999) ("Since [the debtor] failed to schedule the debt owed to the [creditor] on his original petition, no official notice of the proceeding was provided.").

That proof of mailing is not necessary in order to determine the dischargability of a debt under § 523(a)(3) is important to note because, in this case, the original court records have been destroyed. *See* Oct. 5, 2020 Email from J. Hopkins, P. Ex. at 4 (advising that the National Archives disposed of the case file in 2018).[7]

---

[7] The Court takes judicial notice of the petition date and discharge date for the N.J. Bankruptcy Case, which may be found on the CM/ECF website for the Bankruptcy Court for the District of New Jersey. "Before taking judicial

As the evidence proves that the debt was scheduled, it was discharged in 1992 and the 1993 foreign judgment is null and void according to the terms of the N.J. Bankruptcy Case discharge order.

***Whether Plaintiff Had Actual Knowledge of the Discharge Order***

There is a dispute of fact between the parties over what date appears with the translation of Hebrew language stamps on the Debtor's discharge order and schedules. Plaintiff argues that the year is 1997 while Defendant argues that the year is 1992.[8] Either way, the date is after the N.J. Bankruptcy Case was closed and therefore, neither date is relevant for demonstrating actual knowledge under § 523(a)(3).

***Whether the Debt would be recognized if it were not discharged under § 523(a)(3)?***

Even if the judgment were not null and void, the Plaintiff has failed to demonstrate that the foreign judgment is enforceable as a matter of law.

Plaintiff has asked this Court to find his debt nondischargeable under § 523(a)(2) by recognizing the Israeli judgment and using it to apply *res judicata* to the elements of § 523(a)(2). Section 523(a)(2) excepts from discharge any "debt" to the extent that it was obtained by "false pretenses, a false representation, or actual fraud." The judgment offered by Plaintiff is allegedly a judgment for money damages based upon a finding of fraud. *See* July 6, 1993 J. at 10, ECF No. 35-2 ("An act of deception and fraud was perpetrated against [Plaintiff]").

---

notice of a document, a district court must consider whether 'no serious question as to [its] authenticity can exist,' *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007), and whether the contents of the document are 'facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned,' *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (quoting Fed. R. Evid. 201(b)(2))." *James v. Bradley*, 808 F. App'x 1, 3 (2d Cir. 2020). The Court has verified with the National Archives that the N.J. Bankruptcy Case documents no longer exist. The Court has also verified that the N.J. Bankruptcy Case is the only case filed by the debtor (other than this case) and that the documents match the information stored on the Bankruptcy Court for the District of New Jersey's electronic docket. As such, the Court is convinced the discharge order and schedule A-3 are legitimate copies of the original documents—the authenticity of which is not in dispute.
[8] The date appears to be May 18, 1992 to the Court.

Page **7** of **11**

Defendant argues in his opposition to the summary judgment motion, that the foreign judgment is unenforceable under New York law because after twenty years, a money judgment is presumed to be satisfied. The judgment at issue here is twenty-eight years old.

The Bankruptcy Code defines a "debt" as "liability on a claim." § 101(12) And a "claim" is defined as a "right to payment." § 101(5)(A).

Before the Court can analyze whether it should give res judicata effect to the findings of the Israeli court, it must determine whether the judgment should be recognized. Recognition of a foreign judgment in federal court is governed by comity.[9] In this Circuit, courts extend comity whenever a foreign forum had proper jurisdiction and where enforcement "does not prejudice the rights of United States citizens or violate domestic policies[10]." *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir.1987). "A claim will be deemed to have arisen pre-petition if the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation—a right to payment—under the relevant non-bankruptcy law." *Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prod. Corp.)*, 209 F.3d 125, 129 (2d Cir. 2000).

New York law governs actions brought in New York to enforce foreign money judgments. *S.C. Chimexim S.A. v. Velco Enterprises Ltd.,* 36 F. Supp. 2d 206, 211 (S.D.N.Y. 1999); *see also Banca Di Credito Cooperativo di Civitanova Marche e Montecosaro Soc. Cooperativa v. Small*, 852 Fed. Appx. 15, (2d. Cir. Mar. 19, 2021) (hereinafter: "*Banca v. Small*"). New York has codified the principles of comity in the enactment of Article 53 of New

---

[9] "'Comity' . . . is the recognition which one nation allows within its territory to the . . . judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 163–64 (1895).

[10] The Court will not extend recognition to this judgment as it has been discharged in 1992 and therefore, the judgment is null and void. Recognition of a debt that was previously discharge by a United States federal court would certainly violate the public policies (and the bankruptcy laws) of the United States.

York's Civil Practice Law and Rules, also known as the "Uniform Foreign Country Money-Judgments Act" ("NY Foreign Judgments Act"). *Id.*; N.Y. C.P.L.R. ("CPLR") § 5300. This Act limits judicial recognition of foreign country judgments to those that are "final, conclusive, and enforceable where rendered." *Banca v. Small*, 852 Fed. Appx. 15, 17 (2d Cir. Mar. 19, 2021); *see also* CPLR § 5302(a)(2).

The effect of recognition is that the foreign money judgment is entitled to full faith and credit in New York state and "enforceable in the same manner and to the same extent as a judgment rendered in this state." CPLR § 5307(a)(2). Under this Act, "the party seeking recognition of a foreign country judgment has the burden of establishing that this article applies to the foreign country judgment." CPLR § 5302(c).

In order for the Court to recognize a foreign judgment under the NY Foreign Judgments Act, "[a]n action to recognize a foreign country judgment must be commenced within the earlier of the time during which the foreign country judgment is effective in the foreign country or twenty years from the date that the foreign country judgment became effective in the foreign country." CPLR § 5303(d).

More than twenty years have passed since the Israeli judgment became effective and the Plaintiff has failed to meet his burden of demonstrating that the judgment remains effective in Israel. Moreover, Plaintiff has not proved his burden of demonstrating, as a matter of law, that the judgment is enforceable "where rendered." *Banca v. Small*, 852 Fed. Appx. at 17. ("[I]n order to determine under New York law whether the foreign decree is enforceable 'where rendered,' we look to the law of the foreign country where the decree was issued.").

Federal Rule of Civil Procedure 44.1, which is made applicable in bankruptcy cases by Federal Rule of Bankruptcy Procedure 9017, provides that "a party who intends to raise an issue

about a foreign country's law must give notice by a pleading or other writing." Fed. R. Civ. P. 44.1.

Rule 44.1 permits courts to conduct their own independent research to determine foreign law "but imposes no duty upon them to do so."[11] *Baker v. Booz Allen Hamilton, Inc.*, 358 F. App'x 476, 481 (4th Cir. 2009). "Thus, the party claiming foreign law applies carries both the burden of raising the issue that foreign law may apply in an action and the burden of proving foreign law to enable the . . . court to apply it in a particular case." *Bigio v. Coca-Cola Co.*, No. 97 Civ. 2858 (BSJ), 2010 WL 3377503, at *4 (S.D.N.Y. Aug. 23, 2010) (quoting Baker, 358 Fed. Appx. at 481). "Written or oral expert testimony accompanied by extracts from various kinds of foreign legal materials remains the basic mode of proving foreign law." *Id.*

Plaintiff has failed to meet his burden of demonstrating that the judgment is enforceable as a matter of law.

---

[11] The Court has attempted to determine the enforcement period of domestic judgments in Israel but has been unable to find the law on point. The Court did find that Israeli law sets forth a five-year statute of limitations for bringing an application to have a foreign judgment recognized. *See* Art.3 of the Foreign Judgments Enforcement Law of 1958. As such, the twenty-year period provided for under New York law is consistent with Israeli law.


**Conclusion**

For the foregoing reasons, Plaintiff's motion for summary judgment is denied and summary judgment is granted in favor of Defendant. The Defendant shall submit a proposed order within fourteen days of the issuance of this decision, directly to chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



/s/ Cecelia G. Morris
_____
Hon. Cecelia G. Morris
Chief U.S. Bankruptcy Judge

**Dated: December 13, 2021**
**Poughkeepsie, New York**